Right, we'll give everyone a moment to get settled, but our last case is United States v. McCray. And I believe Mr. Lang is the first person we'll hear from. Thank you, Your Honor. Excuse me. May it please the Court, Lewis Lang for the appellant, Fredrick McCray. Your Honors, this Court should vacate Mr. McCray's 30-year sentence they received in the District Court and remand the case to the District Court for resentencing because the District Court committed a serious procedural error when it failed to acknowledge, recognize, comment upon, and apparently consider the non-frivolous mitigation argument that Mr. McCray made in both his sentencing memorandum and motion for a variance as well as the actual sentencing hearing that he should not be sentenced as a career offender under the federal sentencing guidelines. Mr. McCray pled guilty to all of the, without the benefit of a plea agreement, to all of the charges that were leveled against him in the indictment with the exception of one phone count. The PSR came back and calculated his sentencing guidelines at a level 39 total offense level and a criminal history category of 6. That criminal history category was based upon the PSR's conclusion that Mr. McCray was a career offender under the career offender sentencing guidelines. Before Mr. McCray was sentenced, his trial defense counsel submitted a motion for a variance and a sentencing memorandum in which among other mitigating arguments that the trial defense counsel made, he argued that Mr. McCray should not be sentenced or the court should not sentence him under the career offender guidelines because of various reasons, including that the career offender guidelines render very extreme sentences. Mr. McCray would be subject to that extreme sentence, which he calculated at that point at 360 months or 30 years, which really at that point before the sentencing hearing itself was 420 months. The trial defense counsel also submitted that the career offender guidelines have been utilized in a spotty fashion over the years and cited the sentencing commission's own statistics on that spotty consideration and spotty application of the career offender guidelines. The government did not submit a sentencing memorandum. It came to sentencing time, and the government put out its aggravation argument in which it went into great detail regarding the facts and circumstances of the offenses to which Mr. McCray had pled guilty to, but it never mentioned or addressed the mitigation argument that Mr. McCray put in his sentencing memorandum, and that is that he should not be sentenced as a career offender. Can I just start off by asking you a descriptive question?  Have you been able to identify any case where a district court did in fact sentence a defendant below the guidelines? In this case, the district court did, right? Yes, that's correct, Your Honor. Pretty substantially below the guidelines? 60 months below the guidelines. So five years below the guidelines? Five years below the guidelines. Have you identified any case where a court vacated as procedurally unreasonable a below-guidelines sentence on the grounds that the court failed to address an argument for going even further below the guidelines? Now, I'm not saying that controls, but I just might react to it. When you read the cases, they all say a non-frivolous argument for going below the guidelines, and in all the cases I can find, the court ended up sentencing within the guidelines. I haven't been able to find a single case where we vacated as procedurally unreasonable a below-guidelines sentence on the grounds the court didn't address an argument or yet another argument for a below-guidelines sentence. Well, not quite on point, Your Honor, but United States v. Carr, which was a government appeal where I think the sentencing guidelines were 50 months or so, and the district court, and there was an objection in Carr to the application of a particular sentencing guideline. The court overruled that objection and then went on and asked for argument on a below-guidelines sentence and gave a below-guidelines sentence that went actually far below the guidelines. It gave a five-year probationary sentence, and the government appealed on that and said, District Court, you didn't explain why you did that. And I think that's an important point to make because when we're talking about procedural error— Wait, I'm sorry. Give me the facts of that case again. The government is arguing for going above the guidelines in that case? The government was arguing for a guidelines sentence. Okay, and the court gave a below-guidelines sentence, and the government's argument is you didn't explain why you gave a below-guidelines sentence. That's exactly what this court said. How is that analogous to the question I'm asking? It just seems weird because I read those cases and they all say things like— and it makes sense. You have a human being before you who you're deciding how long he or she is going to be deprived of their liberty. There's this advisory guideline range. The defendant makes a whole series of arguments for why you should go below the guideline range, and the court then just says, yeah, guidelines range, and doesn't give any explanation for why it's going within the guidelines. I mean, there's something very intuitive to say. That would feel deeply unfair. Like, I made a whole bunch of arguments for going below the guidelines. You didn't address any of my arguments, and then you slapped me with a guidelines sentence. This case, though, isn't that case. This case is I made a whole series of arguments for a below-guidelines sentence. The District Court, in fact, imposed a below-guidelines sentence. In fact, five years below the guidelines. And it identified one of the reasons that your client had identified for a below-guidelines sentence. And so here the argument is, but you should have also mentioned another reason, I argued, that maybe you would have gone even further below the guidelines. And if nothing else, I have not seen a factually analogous case where a sentence was vacated as procedurally unreasonable. Well, the closest one that comes to mind, Your Honor, at this point in time was the United States v. Carr. But that seems deeply different. The government's argument there is we wanted you to sentence within the guidelines, and you went below the guidelines, and you literally didn't tell us why you went below the guidelines. That just seems a completely different situation. Well, I respectfully disagree, Your Honor, because I think the case law in this court is it doesn't matter if it's a below-the-guidelines or above-the-guidelines sentence. The fact is if it's an either, then the court is required, the District Court, that is, is required to explain and address each and every non-frivolous mitigation argument. Let me put this the other way. If the District Court imposed the exact same sentence and said, I've considered all the arguments, I've considered this, I've considered that, and then it specifically name-checked the one that we're talking about here today, if it had literally done that and imposed the exact same sentence, you'd agree we'd have no procedural reasonableness problem whatsoever? Well, that's correct, Your Honor. I would agree with that if the District Court had done one of two things, and I think the case law supports this, either specifically and explicitly addressed the mitigation argument, the non-frivolous mitigation argument, that it should not sentence Mr. McRae as a career offender, or in the context of the sentencing hearing itself, like in United States v. Vance and the more recent case of United States v. Gaspar, engage counsel in a discussion that seemed to indicate that it was... Oh, no, no. Okay, so that's one way they could do that. They could reject this argument if the court did that, right? I'm sorry? They could reject your argument for departing from the career offender guideline because the career offender guideline has bad consequences. But I'm just saying I'm literally holding everything the same. I'm saying this sentencing hearing proceeds 100% the same way that it did, but just when the District Court identified the reasons for going below the guidelines, if it had tacked on, like, three words, including your argument about the career offender guideline, I guess that's five, but if it had literally said, for this reason, the reasons it gave, and then at some point during a sentence said, including your argument of the career offender guideline, comma, and then it said the sentence, there would be no procedural reasonableness problem there at all. Because then the court would have said part of the reason I'm going below the guidelines is because of your argument of the career offender guideline. And I would generally agree with that. Okay. And then we would maybe go into whether it's substantively reasonable. Good luck arguing that a sentence that's five years below the guidelines is substantively unreasonable. I'm not sure I'd get anywhere with that. If the District Court had given an indication that it had considered the argument and was going to reject that argument or at least grant the argument in some respect, then it would be a procedurally correct sentence. And in that regard, though, the District Court did not do that. The District Court did not mention the argument that it should not sentence within the career offender guidelines and, in fact, started its variance, at least we can assume it started its variance, from the bottom of those career offender guidelines, which was 360 months when you got to, I'm sorry, 420 months when it got to the actual sentencing. 420 months comes from the sentencing guidelines, applying the career offender guideline, 360 months, plus the additional 60 months for the consecutive 924C defense. So the District Court is going to do a sentence. Can you address . . . the government makes an argument that I think you should address, which is, look, at sentencing you really made a unified argument that the judge should sentence. You didn't make it, but the defense counsel made an argument that the defendant should be sentenced below the guideline range and really ticked through a number of different things, his history and characteristics, this issue with the career offender, a number of different things. And then the District Court did address this idea of a variance and said, hey, I'm going to grant a variance, and I'm primarily focused on the history and characteristics. And so to me, when it's presented in that way, why isn't what the District Court . . . to me that's different than if it had been kind of two completely separate arguments that affected your sentence in different ways. Well, I think, Your Honor, in thinking about how mitigation arguments are made, I would suggest to the court that there was a unified kind of theme of the court below or the trial defense counsel, but the unified theme was the guidelines are just too long, it's too severe a sentence. And then there were a series of mitigation arguments within that unified theme, which included age of the client, his rough upbringing, his lack of education, and also his . . . the application of the career offender guidelines. That is not . . . that's kind of a laundry list of mitigation arguments. That's not the same kind of argument that I think the government is trying to dress up the argument as was done in Nance and Gaspard, a more recent case, where there was one unifying theme. There was one horse that the . . . And this would be like the defendants had a really hard life, like for example . . . Would that be an example of the unified theme thing you're talking about? The unified theme is this individual has had an unusually difficult life because the following things happened. Something happened to one of their parents, something happened to a sibling, something happened to a close friend, and then there was a period of time when they were unhoused. That that would be sort of a unified theme, that you should give this person less time because this person has had an unusually difficult life. That's the kind of unified . . . That's the kind of situation where you'd agree a unified theme would work? Well, I think more closely analogous would be the Nance argument where there's a unified theme where the defense counsel was arguing that even though Mr. Nance had a very terrible prior criminal record, he had, in the early days of his criminal activity, been a violent criminal, and then he had the birth of a child, and that somehow lessened his violence and made him a murderer. So you should discount most of my criminal history, including the particulars of it, because it was before this thing that changed my life. That's correct, Your Honor. Or like Gaspard, where there was an implied threat, and that's a unified theme. And this is the argument here for Mr. McCrae was more of a long list of this is mitigating, this is mitigating, that's mitigating, and lastly, you should not apply the career offender . . . Which doesn't seem to have anything to do with the specifics of your client, right? The career offender argument he made wasn't about me personally. It's about the way the career offender group guideline operates on a whole category of people. That category happens to include me. Well, in his sentencing memoranda, it was a more general argument that trial defense counsel made, but when it came to sentencing time, he circled back and applied it specifically to Mr. McCrae and talked about Mr. McCrae's age. He was 44 years old at the time of his sentencing, and a 30-year sentence, which was really a 35-year sentence at that point in time, would have resulted in him being 74 years old or 79 years old when he was released, maybe a little bit younger if you get some credit for good time. But again, he circled back and specifically applied the career offender and the effect of the career offender on Mr. McCrae and his particular circumstance because of his age. So it was a generalized policy argument initially and then circled back and specifically applied it to Mr. McCrae. I see my time is almost up. I would like to invite the Court's attention to this. I should have done earlier, but I missed the case, United States v. Shields, which was decided just a week ago. Judge Heaton was on the panel. It was a Judge Harris opinion. In that case, again, one mitigation argument, which actually started out as a legal argument, that the particular 2K1.1 offense level of 20 should not apply to this particular defendant because he had an Ohio drug offense and he was being sentenced in West Virginia, and West Virginia, which had a similar offense but not exactly, was not a categorical match. The district judge in that case overruled that legal objection, but then when it came to sentencing, he did not recognize what Judge Harris calls the equitable argument for a variance to avoid the possible disparity of sentences between a West Virginia 922JG1 offender and an Ohio 922G1 offender. In that case, Your Honor, Judge Harris reversed and remanded the case because of this procedural error that had been committed by the district judge in that case. I see my time is up. If the court has any other further questions, I have a little time in. Thank you, Mr. Lang. We'll see you in a little while. Your Honors, may it please the court, my name is Chris Lizzo, and I'm here representing the United States of America. The district court adequately explained Mr. McCrae's sentence, and the judgment should be affirmed. Mr. McCrae is putting demands on the district court that go beyond what is required. He is essentially asking this court to transform procedural reasonableness into procedural perfection, and that is not what the Fourth Circuit nor the Supreme Court requires. McCrae presented a series of arguments in the district court that basically summarized with the career offender guidelines were too harsh. As Your Honor has pointed out in my colleague's presentation, Mr. McCrae then requested a below-guideline sentence, and that is exactly what he received. In fact, had he been sentenced below the career offender guidelines, his guidelines would have been 384 months to 465 months. So he still got below what he would have been sentenced had he not been designated a career offender. But now in McCrae's view, this court should surgically dissect every single argument that Mr. McCrae's counsel put forward in order to determine that the sentence was procedurally reasonable, and that is not what this court requires. This court does not require a district court to address every single data point that a defendant makes so long as the central thesis is addressed. A district court is not required to address every argument a defendant makes so long as it focuses on the whole of the defendant's arguments. And when it comes to context, there's no need to spell out reasons where the context makes the justification for the district court's sentencing very clear. I think in this case, the context goes a long ways. Can I ask you maybe my biggest concern when I read this sentencing transcript? As I have this deep-seated concern, it's very clear to me on the record that at various points, the district court is, well, I won't say what's in the district court's head. I'll say what the district court says on the page. The things the district court says on the page at various times blend the ACCA and the career offender guideline. And if I read just what the district court says, it suggests to me that at various points, the district court does not clearly understand the distinction between ACCA and the career offender guideline. Would you agree with that? Your Honor, I would agree that on the joint appendix, page 49, the district court does say that it's going to accept the government's request not to sentence him as an armed career offender. Sure sounds like the ACCA to me. I would present to Your Honor that that would be the equivalent of a verbal scrivener's error. No, I take that. And then my other concern is I see there's like three potential arguments here. The ACCA does not apply to me. That's argument one. The career offender guideline does not apply to me. I am not a career offender under the guidelines. And then the next one is I'm in a post Booker, post Kimbrough world. I don't care whether the career offender guideline applies to me. You should disregard or depart from the career guideline because of a policy disagreement with the career offender guideline, because that guideline has pernicious effects based on different communities, based on different factors. Right. So threshold. But you agree to me those are three different arguments. Right. Yes, Your Honor. Because you could reject argument to one argument to and accept Kimbrough.  Says you can accept argument three. I think, Your Honor, arguments two and three could could use some of the same justification. I do think those could be construed as separate arguments, but I think that could be construed. That's what Kimbrough is about. Right. Yes. You like. I don't care what the guidelines say. I'm going to say as a policy matter, I think those guidelines are wrong and I'm not going to follow them. It's different from whether those guidelines apply. Yes. And there's a Supreme Court case that says those are different things.  So my concern is when I read the sentencing transcript, I am left with a concern whether the district court perceived those as three different questions. And what do I do if I'm concerned based on the transcript about whether the district court perceived those as three different questions? As far as the first question goes, Your Honor, whether Mr. McCray should have been sentenced as an armed career under the Armed Career Criminal Act. I think that's solidly resolved. If you look at page. Oh, no, I know I didn't. But I guess when I read the transcript, I just don't get the sense that the district court judge at the time was focusing on how those are three different issues. And so I don't care how the issue is actually resolved. What would you point me to that makes clear to me that could assuage my concerns that in the moment the district court was not necessarily perceiving that those were three different issues? Counsel, did the defendant ever actually challenge that he wasn't properly designated as a career offender under the guidelines? I mean, that wasn't an argument that the defendant raised in the first instance. He always defaulted to the third argument without raising in the first instance the second argument. That's correct, Your Honor. In the district court, Mr. McCray did not contest the PSR. He did not contest that the career offender guidelines should apply to him. He focused, as Judge Sheetans mentioned, that the career offender guidelines were just too harsh and that the district court should grant a variance because they overrepresent his history and characteristics. And where do I see the district court was thinking about that argument and gave a reason for why it didn't buy it? Your Honor, I would respectfully ask you to look at Joint Appendix page 75. The district court notes that it read and considered the sentencing memo, considered all points made during the sentence by Mr. McCray, considered all the family remarks that Mr. McCray's family presented, appreciated their presence and their word. But his arguments about the career offender guideline having disparate impacts on certain communities are not about him specifically. They're not about his family. Where do I have an indication that the district court perceived the argument? This, I mean, you could, this guy, I mean, I'm not, this is not the argument I'm making. You could summarize the argument he's making. This guideline is racist and you shouldn't follow it. Where do I see that the district court understood and considered that argument? There's nowhere directly in the record that would address it. Because you agree this guideline is racist and you shouldn't follow it. It doesn't have anything to do with this defendant other than, I guess, his membership in a community that would be adversely affected by a racist guideline. Yes, Your Honor, that's correct. But to circle back, Your Honor, there is nowhere directly in the record that would answer or address your question specifically. But what the law allows is for us to look at what the implicit reasonings behind it were. And when you use context, I would suggest to Your Honor that the district court agreed with Mr. McRae's arguments that, based on his history and characteristics, the guidelines, the career offender guidelines were too harsh. And that's precisely why the district court granted Mr. McRae's variance that he requested and imposed the sentence that the district court imposed. So what you're saying is that although the district court didn't address the specific argument or articulate that it was addressing a specific argument, it was addressing what we've called the central thesis of the argument. Is that what you're saying? Yes, ma'am. Yes, Your Honor, that's what I'm saying. And so what would you say the central thesis of his argument was? I would agree with my colleague that my colleague on, I believe, page 4 of their reply brief stated that their central thesis was that the career offender guidelines were too harsh based on the history and characteristics that Mr. McRae presented to the district court. I agree with my colleague that that is the central thesis in this case. But that's the central thesis of every defendant's argument who wants to be sentenced below the guidelines. Based on my history and characteristics, you should sentence me to less. That can't be the level of generality at which we look at central thesis. And to go additionally further, Your Honor, to talk about those history and characteristics that Mr. McRae presented, he presented information about how he had a troubled upbringing, how he had to make sacrifices to essentially survive, how he had to deal with drug addiction throughout his life. He also talked about how he had a legitimate business. He presented information to the district court that the pandemic put him in a unique position. Those are all things about him as a particular human being. They're not part of an argument that says you shouldn't follow this guideline. I mean, I guess if you take his guideline argument seriously, you shouldn't impose the career offender guideline against either anyone or at least any one of the communities that are adversely affected by that. His argument about the guideline doesn't seem like it has anything to do with any of these things you're mentioning. To me, it seems like it's a different argument. I guess another way to think about it, think about a defendant with a massive criminal history and who's done lots of bad things and hasn't had a rough upbringing. That defendant could still make his argument about the career offender guideline being pernicious, right? Yes, Your Honor. Like a person who had a model upbringing and all the advantages in life, they could still say this, right? Yes, Your Honor. Doesn't that suggest it's a different argument? It would suggest it's a different argument, Your Honor. And, again, I understand the particular issue that you're zeroing in on. And there's nowhere in the record that I can point that the district court explicitly addressed that argument. But, again, I'll circle back to my argument that the district court implicitly agreed with Mr. McRae's career offender guidelines. And we know that because the district court specifically imposed the variance to sentence Mr. McRae below the career offender guidelines. And then the district court did provide adequate explanation for why the district court was reaching that sentence. And in doing so, the district court complied with the requirements that this court has set forth in order to determine that an explanation of a sentence is adequate. Your friend ended by mentioning Shields, and normally that would concern me. But you're at a U.S. attorney's office. I suspect you've read our opinion in Shields. Is that correct? I'm embarrassed to say I have not, Your Honor. Okay. If you have any thoughts about Shields, I would invite you to share them with us post-argument because it's a recent case about procedural sentencing. Yes, Your Honor. I did come across the case that this court decided yesterday, U.S. v. Bolden. I know it's not completely analogous because that was more of an Anders decision. The defendant in that case presented a mitigation letter, and the counsel presented an Anders letter. However, the defendant then proceeded pro se and stated that the district court did not address the mitigation letter that the defendant presented. And in not addressing that particular letter, alleged that the sentence was procedurally unreasonable. This court noted that the record established that the district court properly considered other numerous factors that that defendant put forward. And I think that's analogous in this case because although the district court in McRae did not specifically mention the words sentencing career offender, the district court did address a variety of other arguments that Mr. McRae made. And in doing so, in Bolden, this court determined that the sentence was procedurally reasonable. I think the logical inference could be that the district court did a lot of the same stuff in McRae's case. And so this court could also determine that McRae's sentence is procedurally reasonable on those grounds as well. Your Honor, I'll present to you that we are certainly suggesting that the sentence is procedurally reasonable. But if this court were to disagree, we would argue that harmless air applies in harmless air. The government does have the burden that to prove that a more explicit consideration of McRae's arguments would not have affected the sentence. But this court can decline to vacate a sentence when the court's reasoning, although not spelled out, is patently obvious. I would suggest in this case, your honor, your honors, the district court's reasoning was patently obvious. The district court stated exactly why it was imposing the sentence that it imposed. It said, I am going to show you some mercy and I am granting a variance primarily based on McRae's troubled upbringing and poor and dire circumstances that he grew up in. That is on joint appendix page 77. And in that situation, it's clear that the district court was doing something based on the 3553A factors that the court was required to consider when imposing the sentence. And that the district court's decisioning was patently obvious. And to address my colleague's argument on the counter that he made to harmless air, which he perhaps may say for his rebuttal, my colleague says that had the district court taken the 60-month variance and applied that below the career offender guidelines, that he would have gotten a more favorable outcome and therefore harmless air can't apply. But your honors, I would suggest that that applies the wrong framework. That takes more of a guidelines calculation error framework and applies it here in a harmless air analysis. And the harmless air analysis is patently obvious. And where the district court said why it was doing exactly why it was doing, that makes the district court's reasoning patently obvious. And your honors, if there are no further questions, I would respectfully ask that you affirm the district court's judgment and find that the sentence is procedurally reasonable. Thank you, counsel. Thank you. Mr. Lange, you have some rebuttal time? Just very briefly, I would start with where my colleague left off on the harmless air analysis. And I think my view of harmless air is a slightly different analysis. Let me make sure I get the verbiage correct. The government's burden is not patently obvious. I think that analysis is to be applied where the district court does not explicitly address a particular mitigation argument, but within the context of the give and take between the district court and counsel, both defense counsel as well as government counsel. It is patently obvious from that interchange, from the analysis, from the argument and sentencing. Well, isn't the original harmless air case one where the district court imposed a within-guidelines sentence without explaining why, but the defendant had never argued for a below-guidelines sentence? I will just confess this. I was on the Shields panel. I had the same reaction there. I don't really understand how harmless air works in this context. But the original case, do you agree that the original harmless air case that this court said a procedural sentencing error is harmless is a situation where the defendant never argued for a below-guidelines sentence, the district court gave a within-guidelines sentence, and there was nothing in the record to indicate there was anything unusual about the defendant's case? Do you agree with me that's the original harmless air case? I think that's more of a Hernandez analysis where they asked for the bottom of the guidelines, and he got what he asked for, and that was more plain error analysis rather than harmless error analysis. I think the seminal case, if I'm not mistaken in this, I'm trying to think of the name of the case, and I do have, regardless of whether I can recall the name of the case in this particular circumstance, but I do have problems with the harmless error analysis in this context. It's awfully hard to imply. Let's assume for the sake of argument I share some of those concerns, but yet this court has said in multiple published opinions that these kinds of errors can be harmless. I agree with that, Judge, and I don't think, even though there may be a circuit out there that rejects the harmless error analysis in this kind of case, I don't think a certain court can do that because we can't redline Rule 52A of the Rules of Criminal Procedure out of the Rules of Criminal Procedure. You just can't do that. But I would invite the court's attention to Judge Harris's analysis of harmless error, and I'll also, in terms of harmless error, and this may not be exactly on point, but anyway, let me go back, if I could, very briefly to the harmless error analysis, which I understand is that the government has a burden to show that the error did not have a substantial and injurious effect on the sentence, and it must leave the court with the fair assurance that the sentence would have been no different had the district court considered that mitigating argument. And that's a hard analysis to apply, I would suggest, to this court. And in this particular case, you just don't have that. How would the sentence have been different? Well, again, and we're speculating here, and of course you're not supposed to speculate. You're supposed to be able to look at the record and determine what it is the district court was thinking, and we can't really do that because the district court didn't talk about this, and there's no context in which we can look to say the district court, well, didn't say the words career offender, but we know based upon what she said that she was taking that into consideration. All the district court said was it was going to give a little mercy and grant the motion for a variance based primarily on this case troubling and troubled upbringing and poor circumstances. And that is not the mitigation argument that I've suggested the district court did not consider, and that's the career offender argument, which is a more general policy argument, but it is one that defense counsel make and defense counsel frequently. I believe you argued that if the court had considered this argument, the sentence would have been three years shorter or could have been three years shorter. It could have been. But isn't it also the case that if we remand for reconsideration, the sentence could actually be longer? Well, that would involve a retributive argument, which is not retributive, but I forgot an exact phrase. Presumption of indictiveness, all that. Presumption of indictiveness, and there's a fairly recent Fourth Circuit case that talks about that. So I'm not sure that's the case. I'm not sure that's a particular danger for my client, but if it is, that's a risk I have to take. Or it could be the same sentence. But in terms of the same sentence, and the point I wanted to make about harmless error, is what the law says is there are two reasons why we insist upon district courts laying out the reasons for a particular sentence and addressing all the mitigating non-trivialist mitigation arguments as well as non-trivialist aggravation arguments, aggravating arguments on behalf of the defendant, on behalf of the government. And one reason, of course, is the appellate review process. You have to have that in order to properly and adequately review what went on in the court below. But there's another reason that Gaul said, and the other reason is for those people in the district court. Not a bunch of lawyers, but the victim in the district court, the defendant in the district court, the relatives of the victims, the relatives of the defendant. All those people should be able to know at the end of that sentencing hearing why the district court rendered a particular sentence and why the district court either accepted or rejected any mitigation or aggravation arguments made by the government or the defense counsel. And in this particular circumstance, you just don't have that. And while harmless error, a bunch of lawyers in this courtroom know what harmless error means and how it might be able to be applied in this particular circumstance, it doesn't fix what happened in the district court. The only way to fix that, and in this particular circumstance I would suggest the appropriate remedy, is to send it back to the district court so the district court then can affirmatively and clearly state why it was the district court either accepted or rejected the mitigation argument that was left unsaid in the court below. Thank you, counsel. Thank you. Mr. Lange, do I see that you're court-appointed? I am, yeah. Well, on behalf of the court, we thank you very much for your service in this case. The court could not function as we do if lawyers did not agree to take on these cases, and we very much appreciate your work. I'll ask to recess court for the day. We'll come down and greet counsel and resume tomorrow. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Toby J. Heytens, Nicole G. Berner, Elizabeth W. Hanes